JANUARY 9, 1986

No. 85–6155 (A–531).   ROACH *v.* AIKEN, WARDEN, ET AL. C. A. 4th Cir.   Application for stay of execution of sentence of death scheduled for Friday, January 10, 1986, presented to THE CHIEF JUSTICE, and by him referred to the Court, denied. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I adhere to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting).   Accordingly, I would vacate the death sentence and remand the case so that the state court can determine what sentence—other than death—may be appropriate.

In addition, this case affords us an opportunity to address the important question whether an accused may, consistent with the Eighth and Fourteenth Amendments, be sentenced to death for a capital offense he committed while a juvenile.   Although "[c]rimes committed by youths may be just as harmful to victims as those committed by older persons, . . . they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults."   Twentieth

Century Fund Task Force on Sentencing Policy Toward Young Offenders, Confronting Youth Crime 7 (1978). As we stated in *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982):

> "[Youth] is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults. *Bellotti* v. *Baird*, 443 U. S. 622, 635 (1979)." *Id.*, at 115–116 (footnotes omitted).

The need for solicitude for the particular susceptibility of juveniles is well reflected by the facts of this case. The trial judge found that petitioner acted under duress or under the domination of an older person, and that he was suffering from mental retardation and a personality disorder. See *Roach* v. *Martin*, 757 F. 2d 1463, 1468–1469 (CA4 1985). In addition, petitioner now presents evidence suggesting that he suffers from the debilitating effects of Huntington's disease. Under these circumstances, even accepting the Court's current interpretation of the Eighth Amendment, sentencing petitioner to death may be inconsistent with the "'evolving standards of decency that mark the progress of a maturing society,'" *Gregg* v. *Georgia, supra,* at 173 (quoting *Trop* v. *Dulles,* 356 U. S. 86, 101 (1958) (plurality opinion of Warren, C. J.)), and may provide no more than "marginal contributions to any discernible social or public purposes." *Furman* v. *Georgia,* 408 U. S. 238, 312 (1972) (WHITE, J., concurring). "Even if some percentage of adults are deterred by the death penalty, the deterrent effect tends to lose much of its power when imposed upon an adolescent." Streib, Death Penalty for Children: The American Experience with Capital Punishment for Crimes Committed While Under Age Eighteen, 36 Okla. L. Rev., 613, 639 (1983). I would grant the petition for certiorari to resolve this important issue, and would stay petitioner's execution until we decide the matter. At the very least, in light of the evidence suggesting that petitioner suffers from Huntington's disease, I agree with JUSTICE MARSHALL that the stay should be granted and the case held pending our decision in *Ford* v. *Wainwright*, No. 85–5542, cert. granted, *ante,* p. 1019.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

The State of South Carolina intends to execute petitioner James Terry Roach tomorrow, January 10, 1986, at 5 a.m. At approximately noon today, four hours after he presented his federal habeas claims to the Court of Appeals and was denied all relief, petitioner came to this Court, seeking a stay of execution and a writ of certiorari. Among other claims, Roach's counsel contends that Roach has been rendered so mentally incompetent by Huntington's disease that his execution would offend the contemporary standards of decency embodied in the Eighth Amendment. One month ago, this Court granted certiorari to resolve the issues whether the execution of the presently mentally incompetent offends the Eighth Amendment and, if it does, what process is due a condemned prisoner who might lack any understanding of the penalty he faces. *Ford* v. *Wainwright*, No. 85–5542, cert. granted, *ante*, p. 1019. Because in the 17 hours allowed it by the regime of *Barefoot* v. *Estelle*, 463 U. S. 880 (1983),* this Court has decided to allow Roach to go to his death while the question of his execution's constitutionality is yet to be resolved, I must dissent from the denial of petitioner's application for a stay of execution.

In 1977, several months before his 18th birthday, petitioner pleaded guilty to two counts of murder and charges of criminal sexual assault, kidnaping, and armed robbery. At the capital sentencing hearing, a psychiatrist appearing on Roach's behalf testified that while Roach was mentally retarded, he could not, at that time, be diagnosed as suffering from Huntington's disease. Huntington's disease is an inherited disorder of movement, personality, and thought that often does not manifest itself until an individual has reached adulthood. *Roach* v. *Martin*, 757 F. 2d 1463, 1473 (CA4 1985). After considering this and other mitigating factors, however, the trial judge sentenced Roach to death on both murder counts. The conviction and sentence were upheld on direct review, *State* v. *Shaw (Roach)*, 273 S. C. 194, 255 S. E. 2d 799 (1979), and this Court denied certiorari, 444 U. S. 1026 (1980).

In his first federal habeas petition, Roach urged that he had indeed inherited Huntington's disease from his mother, who had

---

*See Note, Summary Processes and the Rule of Law: Expediting Death Penalty Cases in the Federal Courts, 95 Yale L. J. 349 (1985).

already been diagnosed as having that disorder in an early stage. Roach further alleged that, were he given the opportunity to prove this fact, he could raise doubts as to both his competency to stand trial and the appropriateness of his death sentence. It appears that Roach did not press any claim of his present incompetence to be executed, for, in affirming the District Court's denial of his habeas petition, the Court of Appeals concluded:

> "[E]ven assuming arguendo that Roach does in fact have the Huntington's gene, in which case HD [Huntington's disease] will inevitably manifest its symptoms, we can see no way that this fact alone would alter Roach's conviction and sentence. In other words, a determination today that Roach has the HD gene would not affect the findings that Roach was sane at the time of the offenses and that he was competent to stand trial, and is now competent." 757 F. 2d, at 1474.

The petition now before this Court, however, goes beyond mere allegations that Roach suffers from an as-yet-unmanifested genetic disorder. Accompanying his petition is an affidavit by Dr. William H. Olsen, a distinguished neurologist who, less than two weeks ago, was the first neurologist to have examined Roach in the last five years. Dr. Olsen not only found that there is a "reasonable degree of certainty" that Roach suffers from Huntington's disease, but also made a preliminary finding that Roach suffers from the mental deterioration that is a characteristic symptom of the disorder. Dr. Olsen's conclusion, though admittedly preliminary, raises substantial doubts as to whether Roach has any understanding that he is scheduled to die tomorrow morning. Certainly, nothing in the State's papers assuages these doubts.

Neither this Court nor the State of South Carolina is now in a position to ascertain whether Roach is indeed sufficiently competent to face his execution with the dignity that is the final right we allow even the most heinous criminals. What we can do is allow Roach's counsel and experts the time and opportunity to make such a showing. The Court's refusal to do so even while it prepares to hear a case in which another condemned man raises a similar claim, provides yet another stark example of the arbitrariness with which the death penalty is administered in the United States today. I would grant the stay and defer consideration of Roach's petition for certiorari pending this Court's decision in *Ford* v. *Wainwright, supra.*