522 A.2d 1075

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph G. AULISIO, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1986.

Decided March 19, 1987.

Reargument Denied June 2, 1987.

86

Joseph L. Vullo, for appellant.

Ernest D. Preate, Dist. Atty., Marion E. MacIntyre, Deputy Atty. Gen., appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On May 27, 1982, in a trial by jury in the Court of Common Pleas of Lackawanna County, the appellant, Joseph G. Aulisio, was found guilty of two counts of murder of the first degree and two counts of kidnapping. A separate sentencing hearing was held, as required by 42 Pa.C.S.A. § 9711, and appellant was sentenced to death in connection with the two murder convictions. With respect to each of the two kidnapping convictions, a sentence of seven and one-half years to fifteen years imprisonment was imposed, such sentences to be served consecutively. The instant direct appeal ensued.

The incident from which the convictions arose was one in which appellant, who was fifteen years of age at the time, fatally shot two younger children, ages four and eight, after having taken them to a vacant house. The facts

regarding this incident were developed through the evidence at trial as follows.

On July 28, 1981, searchers discovered the bodies of Christopher Ziemba, age four, and Cheryl Ziemba, age eight, in a secluded and abandoned strip mining area near the town of Old Forge in Lackawanna County. Autopsies were performed, and it was determined that the children had been killed by two blasts from a .12 gauge shotgun, fired from close range, wounding the chest and head areas of the children, respectively. The mother of the victims, Mrs. Diane Ziemba, last saw her children at approximately 4:00 p.m. on July 26, 1981, at which time she watched from her apartment window as her two children, accompanied by appellant, entered an unfinished house on nearby property owned by appellant's family. Although the autopsies did not establish the exact time of death of the children, the autopsies did establish that the deaths likely occurred in the late afternoon of the day on which appellant was seen entering the house with the children. Physical evidence found in the house, to wit, blood stains, hair fibers, tissue residues, and other traces of shotgun usage including the presence of a shotgun pellet, established that the children had been shot in an upstairs bedroom and closet area.

It was also shown that, during the week preceding the murders, appellant had a .12 gauge shotgun, and ammunition, in his bedroom in a residential trailer near the unfinished house. After the murders, the shotgun was never again found, but spent .12 gauge shotgun shells were discovered under appellant's bed in the trailer. A crime laboratory determined that one of the shells had traces of blood upon it, though the traces were too small to permit confirmation that the blood was of human origin.

Two individuals, who had been unloading brush from a truck in a nearby strip mine area on the day the children were murdered, *positively identified* appellant as the person they had seen, around 4:45 p.m. that day, driving a small white car through the desolate and rough terrain where the children's bodies were later found. The car was

subsequently identified as belonging to appellant's family, and physical damage to the underside of the car, consistent with its having been driven over rough terrain, was shown to have occurred on the day in question. Appellant made a number of grossly inconsistent statements as to the manner in which the underside of the car had been damaged.

It was established that the children's bodies had been transported to the strip mining area in certain pieces of blood-stained blue and white carpeting that were found near the bodies. The carpet pieces were identified as having been in the possession of appellant prior to the crime. Fibers from the carpeting were found in the trunk of the car that appellant had been seen driving in the strip mining area where the bodies were dumped. Traces of human blood were found on a can in the trunk of appellant's car. In addition, pieces of a broken glass ornament were found on the body of one of the children, as well as in the trunk of appellant's car and in the bedroom closet area where the murders took place.

On July 29, 1981, three days after the murders occurred, appellant issued a tearful statement to police in which, although he did not confess to the killings, he admitted being at the crime scene at 6:00 p.m. on the day of the murders. He stated that, at 6:00 p.m. that day, the bodies of the children were no longer present in the house. That statement was consistent with other evidence indicating that appellant had disposed of the bodies around 4:45 p.m. that day. Appellant's statement also indicated that a .12 gauge shotgun was present at the crime scene. The significance of that statement lies in the fact that the shotgun has never been located in the course of the murder investigation, and, further, in that appellant implicated the exact murder weapon, without relying upon the autopsy's determination that a .12 gauge shotgun had in fact been used to commit the crime. Finally, and most significantly, appellant admitted in his statement that he had cleaned up the gruesome murder scene, including the blood, etc., because he believed he would "get in trouble" if he failed to do so.

90

 Appellant has not challenged the sufficiency of the evidence as to the verdict of guilt as to murder of the first degree. However, in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), this Court stated that in each death penalty case a determination would be made by this Court as to whether there was sufficient evidence to sustain the conviction for murder of the first degree. This determination is made even in cases where the death sentence is vacated and the case is remanded for resentencing. *Commonwealth v. Frederick,* 508 Pa. 527, 532 n. 1, 498 A.2d 1322, 1324 n. 1 (1985). In the instant case, the evidence of appellant's guilt is so strong as to leave no question that appellant's guilt has been established beyond a reasonable doubt. Indeed, the conviction is supported by a trail of physical evidence linking appellant to the murders, testimony linking appellant to the scene of the crime and to the scene where the victims' bodies were dumped, and by appellant's own incriminating statement.

 Appellant challenges the validity of his conviction on grounds the trial court allegedly erred in permitting prospective jury members to be "death qualified." During the jury selection process, the prosecution challenged for cause a number of prospective jurors who stated their belief that they could not vote for the death penalty in this case under any circumstances. Exclusion of those jurors from the panel, appellant argues, resulted in the selected jury being conviction prone, in violation of Sixth and Fourteenth Amendment rights to an impartial jury selected from a representative cross-section of the community. We find no merit in this contention, for this Court has repeatedly held that the "death qualification" process is consistent with constitutional trial guarantees. E.g., *Commonwealth v. Smith,* 511 Pa. 343, 351, 513 A.2d 1371, 1375 (1986). See also *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

Having concluded that appellant's conviction for murder of the first degree should be sustained, we now turn to the

question of whether the death penalty selected by the jurors can be upheld. At the sentencing hearing conducted in this case, the jurors found to be present two of the statutory aggravating circumstances, which, the jurors concluded, outweighed any mitigating circumstances. Under such circumstances, a sentence of death is required. 42 Pa.C.S.A. § 9711(c)(1)(iv). The aggravating circumstances were that appellant "committed a killing while in the perpetration of a felony," 42 Pa.C.S.A. § 9711(d)(6), and that appellant "has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable ...," 42 Pa.C.S.A. § 9711(d)(10). The first aggravating circumstance reflected the jury's finding that the instant murders occurred in the course of a kidnapping, while the second aggravating circumstance reflected the fact that appellant was found guilty in the present case of having committed more than one murder. The jury did not specify which mitigating circumstances were considered, but evidence had been presented as to appellant's age, mental capacity, etc. Under the provisions of 42 Pa.C.S.A. § 9711(h)(3)(ii), this Court must affirm a sentence of death unless we find that "the evidence fails to support the finding of an aggravating circumstance specified in subsection (d)."

■ Appellant contends that the evidence was insufficient to support the verdict of guilt as to kidnapping, and, thus, that one of the statutory aggravating circumstances found by the jury was without proper basis. We agree. The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 303, 489 A.2d 1340, 1342 (1985). Upon a review of the record in the instant case, it is apparent that the elements of the crime of kidnapping are

not established beyond reasonable doubt, and that evidence relevant to the kidnapping charge is, at best, of a speculative nature.

To sustain a conviction for kidnapping, there must be proof that the victim has been confined for a substantial period in a place of isolation or that the victim has been removed a substantial distance from his original location. 18 Pa.C.S.A. § 2901(a). In addition, it must be shown that such confinement or removal was accomplished by force, threat or deception, or, in the case of a victim under the age of fourteen years, without the consent of a parent or guardian. 18 Pa.C.S.A. § 2901(b).

The primary evidence presented by the Commonwealth relative to the kidnapping charge was the testimony of Mrs. Diane Ziemba. Mrs. Ziemba testified that she last saw her two children, on the day of the murders, when she watched from her apartment window as her children, accompanied by appellant, entered a nearby unfinished house owned by appellant's family. The Commonwealth argues that, because there was evidence the children were subsequently murdered in a bedroom closet area of that house, the children might have been confined there while being subjected to terrorizing acts by the appellant. The period of alleged confinement consists of some portion of the time span between 4:00 p.m., when the children were seen entering the house with appellant, and 4:45 p.m., when appellant was seen at the strip mining area where the children's bodies were later found to have been dumped.

The record, however, is devoid of evidence that the children were in fact confined or terrorized before they were murdered. The mere fact that the murders occurred in a bedroom closet area is not, without more, proof that confinement had occurred. It is not beyond the realm of common experience that children frequently play in or explore neighboring houses, including areas such as bedrooms and closets, similar to those involved in the present case. This is particularly so, when, as in this case, they are accompanied in the house by one of the homeowner's chil-

dren. Murder and kidnapping are separate offenses, and proof of one does not in itself provide proof of the other. Further, the mere possibility that the children might have been subjected to the alleged treatment is not sufficient to support the conclusion, beyond reasonable doubt, that such treatment in fact occurred.

■ Similarly, there is a lack of evidence that, in going with the children to his neighboring unfinished house, appellant removed the children a substantial distance from the backyard area behind Mrs. Ziemba's residence where the children had until then been playing. Nor is it established, beyond reasonable doubt, that any such movement of the children was accomplished by force, threat, deception, or without parental consent. The distance between the backyard play area and appellant's house was not great, for Mrs. Ziemba testified that the play area was immediately adjacent to the property owned by appellant's family. Mrs. Ziemba testified that she had never expressly given the children permission to enter the unfinished house, but she recalled that her children did nevertheless previously enter that house for brief periods when they were playing with children from appellant's family. She also testified that her children played around the property owned by appellant's family, and, further, that appellant was not a stranger to the Ziembas, for he had on numerous occasions been a visitor to the Ziemba residence, where he consumed snack foods, watched TV, engaged in card games, and played with the Ziemba children.

The last time Mrs. Ziemba saw her children, her son Christopher was entering the unfinished house in question and her daughter Cheryl was a few feet behind him, and, immediately behind Cheryl was appellant. Appellant had his hand on Cheryl's back in an apparently innocuous manner. Mrs. Ziemba testified as follows regarding the manner in which appellant was using his hand: "There was nothing threatening or pushing in it. Like she didn't stumble or anything. She was just walking. It was just like he was guiding her." Mrs. Ziemba testified that the sight of her

children entering the unfinished house did not cause her any particular concern or anxiety, and that she did not object to appellant's taking the children into the house, for the weather had been rainy that day and it appeared that appellant was merely taking the children in out of the rain. For example, Mrs. Ziemba stated, "There was nothing unusual about it, nothing suspicious or anything. I just thought he was taking them in out of the rain for a little while because it had been drizzling on and off all day."

■ We believe this testimony provides an inadequate basis to support the jury's finding that the instant murders were committed during the perpetration of a felony, to wit, kidnapping, in that elements such as confinement, removal, force, threat, deception, and lack of parental consent are not established to a degree that is more than speculative, at best. Inasmuch as one of the aggravating circumstances relied upon by the jury in setting the sentence at death is not, therefore, supported by the evidence, we are required under the sentencing statute to vacate the sentence of death and remand to the Court of Common Pleas for appellant to be sentenced to life imprisonment. See, *Commonwealth v. Holcomb*, 508 Pa. 425, 458–459, 498 A.2d 833, 850 (1985) (plurality opinion). This is not a case where a jury expressly found that no mitigating circumstances were present, such that, upon declaring invalid one of multiple aggravating circumstances found by the jury, this Court could nevertheless affirm the death sentence on grounds that the death penalty is required so long as there remains at least one valid aggravating circumstance. See *Commonwealth v. Buehl*, 510 Pa. 363, 390, 508 A.2d 1167, 1181 (1986). Further, because the instant convictions upon charges of kidnapping were not adequately supported by the evidence, the sentences imposed with respect thereto must be reversed.

It has been argued that the instant case presents a question as to the propriety, from a constitutional perspective, of imposing the death penalty upon children. Due to our determination, however, that a remand for imposition of

a sentence of life imprisonment is required in this case, we need not address at this time the issue of the constitutionality of the execution of children.

The convictions as to the two counts of murder of the first degree are affirmed, the sentence of death is vacated, and the case is remanded to the Court of Common Pleas of Lackawanna County for appellant to be sentenced to life imprisonment. The convictions as to the two counts of kidnapping are reversed, and the sentences imposed with respect thereto are vacated.

NIX, C.J., and HUTCHINSON, J., join this opinion and file concurring opinions.

LARSEN, J., files a dissenting opinion in which McDERMOTT, J., joins.

PAPADAKOS, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

I join the majority opinion.

Although I still have reservations as to the fundamental fairness of a "death qualified" jury for the reasons set forth in *Commonwealth v. Maxwell*, 505 Pa. 152, 170, 477 A.2d 1309, 1319 (1984) (Nix, C.J., dissenting), I must concede that it is the law of this Commonwealth.

HUTCHINSON, Justice, concurring.

I join the majority opinion. However, I believe Mr. Justice Papadakos's dissenting opinion deserves comment. I agree with him that Section 9711 of the Sentencing Code, 42 Pa.C.S. § 9711, does not establish a *per se* rule requiring this Court to set aside a death penalty where any one aggravating circumstance found by the jury is not supported by the evidence, and there are other mitigating circumstances. If it is clear that the error committed by the jury was harmless, as might occur if the jury states both the aggravating and mitigating circumstances that it found, then I believe we can sustain the death penalty.

I do not believe that the majority opinion is inconsistent with my position. In this case the error cannot be found to be harmless in the face of the mitigating circumstances of defendant's age of fifteen when he committed the crimes, and the presence of a single proper aggravating circumstance as found by the jury. *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (Hutchinson, J., Opinion Announcing the Judgment of the Court).

LARSEN, Justice, dissenting.

I dissent and would affirm all of appellant's convictions as well as his two judgments of sentence of death.

Initially, I disagree with the majority's conclusion that "the elements of the crime of kidnapping are not established beyond reasonable doubt, and that evidence relevant to the kidnapping charge is, at best, of a speculative nature." At 91–92. The crime of kidnapping is defined in the Pennsylvania Crimes Code as follows:

(a) **Offense defined.**—A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or *if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:*

(1) To hold for ransom or reward, or as a shield or hostage.

(2) *To facilitate commission of any felony* or flight thereafter.

(3) *To inflict bodily injury on or to terrorize the victim or another.*

(4) To interfere with the performance by public officials of any governmental or political function.

(b) **Grading.**—Kidnapping is a felony of the first degree. *A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 years* or incompetent, *if it is*

*accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.*

18 Pa.C.S.A. § 2901 (emphasis added). In my opinion, the record evidence in this close case adequately supports the jury's verdict of guilty on the kidnapping charges and demonstrates that appellant, Joseph G. Aulisio, unlawfully confined eight year old Cheryl Lynn Ziemba and four year old Christopher Ziemba for a substantial period of time in a place of isolation in order to facilitate the crime of murder and to inflict bodily injury on or to terrorize the victims. The confinement was unlawful because it was accomplished by force or the threat of force, and because it was accomplished without the consent of the victims' parents.

In reviewing the record for sufficiency of the evidence, we must apply the normal standard of review:

> [W]e must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Rhodes*, 510 Pa. 537, 540, 510 A.2d 1217, 1218 (1986), *quoting Commonwealth v. Scatena*, 508 Pa. 512, 518, 498 A.2d 1314, 1317 (1985). Viewed in that light, I believe the Commonwealth has met its burden of proving each necessary element of the crime of kidnapping beyond a reasonable doubt.

The jury could reasonably infer from the record evidence that the two young victims were confined upstairs in an unfinished, semi-constructed house in a closet for a "substantial period" of time. Given the victims' helplessness in the face of their older, stronger, more mature assailant, they were certainly in "isolation" within the meaning of the Crimes Code, in a place where the victims were forbidden to go unless accompanied by their father. Notes of Testimony, Vol. I at 363, testimony of Mrs. Diane Ziemba. As

Judge Cercone stated for the Superior Court en banc in *Commonwealth v. Hughes*, 264 Pa.Super. 118, 126, 399 A.2d 694, 698 (1979); "what is a 'substantial period' in time can depend on the mental state of the victim. The fright that can be engendered in 30 minutes can have the same debilitating effect on one person as 30 hours may have on another." Although the unfinished Aulisio house was spatially nearby the victims' home and yard, the jury could properly have inferred that these young victims were in an isolated (and terrifying) place for 30–45 minutes, a "substantial period" of time under the circumstances.

The jury could also have inferred, quite reasonably, that appellant's intention in taking the victims into the unfinished house was to facilitate the commission of their murder and/or to inflict bodily injury upon them, and this would be so whether he formed the intention to kill them either before or after they entered the house. *See Commonwealth v. Williams*, 476 Pa. 557, 565, 383 A.2d 503 (1978).

Finally, the jury could reasonably infer that appellant's confinement of the Ziemba children was unlawful because it was accomplished by force or threat of force and because the victims' parents had not consented to such confinement. As to force and the threat of force, this Court's recent decision in *Commonwealth v. Rhodes, supra,* is quite analagous to the instant situation. In that case, we found the evidence sufficient to convict appellee Rhodes of "forcible" rape where he led or lured his eight year old victim into an abandoned building, and proceeded to engage in acts of sexual and deviate sexual intercourse. Appellee Rhodes was a neighbor of the victim and her family. In reversing the Superior Court in *Rhodes*, this Court held:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts.

This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence. As Judge Cavanaugh noted in his dissenting opinion in this case, "the illicit commands of this twenty year old [man] in an isolated and abandoned room were ... an imperative which gave the [eight year old] child victim no alternative but submission to appellant's corrupt scheme." 332 Pa. Super. [273] at 281, 481 A.2d [610] at 614. This eight year old child was physically and emotionally helpless to resist the commands of her twenty year old neighbor, and his perverse acts of sexual intercourse and deviate sexual intercourse were indeed achieved by "forcible compulsion" and "by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." Accordingly, the evidence was sufficient to sustain his conviction for rape under 18 Pa.C.S.A. § 3121(1) and (2). 510 Pa. at 557–59, 510 A.2d at 1227–28.

Likewise in the instant case, there was an element of forcible compulsion inherent in appellant's act of taking the eight year old and four year old victims into the unfinished Aulisio house in order to murder them; they were powerless to resist. Although appellant was, himself, a legal minor of fifteen years of age, the record indicates that he was still of sufficient age, maturity and physical development [1] as to compel the children to submit to his commands, and he wielded absolute authority derived from the respective capacities of the child victims and the older juvenile who had been adjudicated not amenable to treatment through the juvenile justice system. Accordingly, appellant's confinement of the victims in the upstairs bedroom closet of an unfinished house to facilitate murder and/or to

1. For example, appellant had been driving motorbikes and cars for quite some time.

inflict bodily injury was accomplished by force or the threat of force.

Additionally, such confinement was accomplished without the consent of the victims' parents. The majority selects certain portions of Mrs. Ziemba's (the victims' mother) testimony which seems to support an inference that appellant's taking her children to the unfinished house was with her implicit consent because she was not immediately alarmed when she saw appellant steering them into the house. This selected recital of Mrs. Ziemba's testimony is misleading, however, because Mrs. Ziemba also specifically testified that neither she nor her husband gave the children permission to enter the house unless accompanied by her husband, *nor was appellant given permission to take the children into the house.* N.T. Vol. I at 362–63, 368–69. Appellant's confinement of the children, therefore, was not with the consent of their parents and there is nothing in the record to indicate otherwise.

It is true that it "is not beyond the realm of common experience that children frequently play in or explore neighboring houses, including areas such as bedrooms and closets, similar to those involved in the present case." At 92. However, I do not believe that just because the evidence *might have been* consistent with innocence (vis a vis the kidnapping charges), the jury was thereby precluded from viewing the evidence in the light most favorable to the Commonwealth and drawing reasonable inferences in favor of guilt. As we stated in *Commonwealth v. Williams, supra,* "It must be remembered that the burden of proof upon the Commonwealth has never been construed to require it to eliminate every conceivable hypothesis of innocence." 476 Pa. at 564, 383 A.2d 503. Yet the majority's holding today requires the Commonwealth to do just that. I would hold that the Commonwealth has met its burden of proving each element of kidnapping beyond a reasonable doubt, and I would affirm the convictions for kidnapping. Obviously, I would also find the evidence sufficient to support the aggravating circumstance of committing a kill-

ing while in the perpetration of a felony, as found by the jury. 42 Pa.C.S.A. § 9711(d)(6).

As I believe the evidence was sufficient to sustain both aggravating circumstances found by the jury ("perpetration of a felony" and that appellant "has been convicted of another ... offense ... for which a sentence of life imprisonment or death was imposable;" 42 Pa.C.S.A. § 9711(d)(6) and (10)), and as I perceive no arbitrary factors or improprieties in his sentencing hearing, I would affirm appellant's judgments of sentence of death. Furthermore, even if I were to agree with the majority that the evidence was insufficient to sustain the convictions for kidnapping and the aggravating circumstance of killing while in the perpetration of a felony, that fact alone would not require automatic vacation of the death penalty.

The majority states:

Inasmuch as one of the aggravating circumstances relied upon by the jury in setting the sentence at death is not, therefore, supported by the evidence, we are required under the sentencing statute to vacate the sentence of death and remand to the Court of Common Pleas for appellant to be sentenced to life imprisonment. *Commonwealth v. Holcomb*, 508 Pa. 425, 429, 498 A.2d 833, 835 (1985) (plurality opinion). This is not a case where a jury expressly found that no mitigating circumstances were present, such that, upon declaring invalid one of multiple aggravating circumstances found by the jury, this Court could nevertheless affirm the death sentence on grounds that the death penalty is required so long as there remains at least one valid aggravating circumstance. See *Commonwealth v. Buehl*, 510 Pa. 362, 390, 508 A.2d 1167, 1181 (1986).

At 94 (emphasis added).

It is simply not true that "the sentencing statute" requires us to vacate a sentence of death where we have invalidated one of multiple aggravating circumstances

found by a jury which has also found the existence of some mitigating circumstances.

The Sentencing Code provides that:

(3) The Supreme Court shall affirm the sentence of death *unless it determines that:*

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) *the evidence fails to support the finding of an aggravating circumstance* specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S.A. § 9711(h) (emphasis added). Here, the evidence clearly "supports the finding of an aggravating circumstance specified in subsection (d)," namely that appellant was convicted of another offense committed at the same time for which a sentence of death was imposable. 42 Pa.C.S.A. § 9711(d)(10). Thus, assuming for the sake of argument *only* that there was insufficient evidence to support *one of the aggravating circumstances,* the continuing vitality of the remaining aggravating circumstance requires that we *affirm* the sentence of death *unless* we determine that it was "*the product of* passion, prejudice or any other arbitrary factor." This Court should review the entire record to determine *whether* consideration of an improper or unsupported aggravating circumstance so infected the jury's deliberations and determination as to render the sentence of death the product of passion, prejudice or an arbitrary factor.

As I stated in *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985):

[U]nder our Sentencing Code, there is no reason why this Court cannot examine the balance struck by the jury or judge and decide that the consideration of improper aggravating circumstances could not possibly have affected the balance or have produced the sentence of death. 42

Pa.C.S.A. § 9711(h)(3)(i). While the jury is not required to list mitigating circumstances it found, this Court may easily search the record to determine any and all mitigating circumstances presented to the jury. From all the foregoing, I would hold that it is appropriate to apply a harmless error analysis where the sentencer has found both proper and improper aggravating circumstances which outweigh mitigating, and to uphold the validity of a sentence of death so imposed where this Court determines, beyond a reasonable doubt, that elimination of the improper aggravating circumstances could not possibly have affected the balance or produced the sentence of death.

508 Pa. at 486, 498 A.2d at 865 (Larsen, J., concurring and dissenting opinion). I will not reiterate all of my reasoning set forth in *Holcomb,* but I note that such harmless error analysis in reviewing a sentence of death has received the approval of the United States Supreme Court in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), which stated:

The crux of the issue, then, is whether the [sentencer's] consideration of this improper aggravating circumstance *so infects the balancing process* created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court [to] let the sentence stand.

* * * * * *

[T]he Florida Supreme Court does not apply its harmless error analysis in an automatic or mechanical fashion, but rather upholds the death sentences on the basis of this analysis only when it actually finds that the error is harmless. *There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. See* n. 9, *supra.* "What is important ... is an individualized determination on the basis of the character of the individual and the circum-

stances of the crime." *Zant [v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).]

Accordingly, I believe the majority errs in automatically vacating the sentence of death because it finds insufficient evidence to support one of the two aggravating circumstances found by the jury.

Because I would affirm the sentences of death imposed upon appellant, it is appropriate for me to address his argument that the death penalty is unconstitutional as applied to a convicted murderer who was fifteen years of age when he committed the murder, and I would reject that argument.

Appellant was born on March 13, 1966, and thus was fifteen years and four months of age when he murdered the two child victims in July, 1981. He was over sixteen years of age when he was convicted and sentenced to death, and was twenty years and seven months of age when this appeal was argued in October, 1986. I do not believe the death penalty constitutes "cruel punishment" as applied to this appellant.

The legislature could have enacted an arbitrary cut-off point based solely on a first degree murderer's age; it did not. Instead, it provided that the age of the murderer and his mental condition were to be considered and factored into the jury's determination as to the appropriate penalty to be imposed in capital cases, along with numerous other aggravating and mitigating circumstances and factors. 42 Pa.C. S.A. § 9711(d) and (e). Age is also a major, but not sole, factor to be considered by a court in its determination of whether to prosecute a juvenile for murder in the criminal justice system or to certify the juvenile as amenable for treatment in the juvenile justice system. 42 Pa.C.S.A. §§ 6322 and 6355(a)(4) and (e) (the Juvenile Act); *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975). The legislative scheme recognizes that there are juveniles who are, chronologically, children but who are psychologically and emotionally able to act as adults and to be responsible as adults for the consequences of their actions. The legisla-

ture has placed the responsibility of determining which juveniles should be treated as adults in the first instance with the courts of common pleas, and the responsibility for imposing the appropriate sentence in capital cases upon the jury or judge after considering all relevant factors and circumstances concerning the circumstances of the crime and the individual characteristics, history and background of each murderer, including his age.

Although the United States Supreme Court has, on several occasions, had the opportunity to decide whether the death penalty as applied to minors is unconstitutional under the Eighth Amendment to the United States Constitution, thus far it has declined to do so. *See, e.g., Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Roach v. Aiken,* 474 U.S. 1039, 106 S.Ct. 645, 88 L.Ed.2d 637 (1986); *Pinkerton v. McCotter,* — U.S. —, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986). The court has, however, made it clear that "the chronological age of a minor," as well as "the background and mental and emotional development of a youthful defendant" must be duly *considered* in the sentencing determination in capital cases. *Eddings v. Oklahoma, supra* 455 U.S. at 116, 102 S.Ct. at 877.

This Court, too, has previously taken a similar position regarding the propriety of imposing the death penalty upon a juvenile. In *Commonwealth v. Green,* 396 Pa. 137, 151 A.2d 241 (1959),[2] this Court was asked to determine whether the lower court had abused its discretion in sentencing a fifteen year old boy-murderer to die. In *Green,* this Court

**2.** *Green* was cited with approval in this Court's decision in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 76, 454 A.2d 937 (1982), *cert. denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), wherein we stated:

The finding that the death penalty is not *per se* "cruel punishment" under Article I, § 13 is implicit in many of our prior decisions. *See, e.g., Commonwealth v. Green,* 396 Pa. 137, 151 A.2d 241 (1959) (death penalty not cruel and unusual punishment under either state or federal constitutions simply because applied to 15 year old defendant, although sentence reduced because lower court failed to consider particularized factors relating to the individual, not "from a disinclination against capital punishment")....

vacated that appellant's sentence of death and remanded for imposition of a life sentence, stating:

The court below having found that the facts and circumstances surrounding this homicide warranted a verdict of guilty of first degree murder, what effect, if any, should have been given by the court below to Green's age and youth in determining the penalty? *Of itself, Green's chronological age of 15 years would not justify the imposition of the lesser penalty, but his age is an important factor in determining the appropriateness of the penalty* and should impose upon the sentencing court the duty to be ultra vigilant in its inquiry into the makeup of the convicted murderer.

\* \* \* \* \* \*

... Both the criminal act and the criminal himself must be thoroughly, completely and exhaustively examined before a court can exercise a *sound* discretion in determining the appropriate penalty.

On the record there is no evidence of the background of this boy; his home environment, the economic circumstances under which he was reared, his scholastic record; in short, what was this boy, now a convicted murderer, really like prior to the commission of this crime? Of these things the court below was without knowledge and made no inquiry. It is manifest from this record that two factors only led to the imposition of the death penalty—the manner of the murder and the placation of, what at least one judge conceived to be, the public plaint. The court below in determining the appropriate penalty considered the criminal act, but not the criminal himself and in so doing committed an abuse of discretion....

A reduction of the sentence imposed on Green arises neither from a disinclination against capital punishment nor a complacent attitude toward convicted criminals. The reduction of this sentence is directed because the court below did not use the proper scales in determining the penalty to be imposed.

396 Pa. at 147, 149–50 (emphasis added). The majority fails to mention *Green.*

In my view, the legislature has charted a wiser—and constitutionally sound—course, in line with *Green* and *Eddings,* in providing that age will be a *factor* in considering the appropriate treatment of the juvenile murderer, but will not in and of itself be dispositive of the appropriate sentence. In charting such course, the legislature avoided the expedient of choosing some arbitrary cut-off point to operate in all cases without regard to the characteristics, history, background and amenability for treatment of each individual juvenile murderer.

The case before us is a case in point. Unlike the record in *Green,* the record before us does indeed disclose that appellant's age, emotional development, history, maturity, and mental capacity, as well as the circumstances of the offense, were before the jury which determined death to be the appropriate penalty because the aggravating circumstances outweighed the mitigating. That record included the testimony of appellant's family, friends, neighbors and school personnel, as well as a complete psychological profile rendered through the testimony of Dr. Gerald Cooke, who had examined and evaluated appellant and testified as a defense expert witness at the juvenile transfer/certification proceeding.

I am not unsympathetic to Joseph Aulisio's difficult childhood which, the record shows, contained tragedy and trauma including the death of a beloved sister and the break-up of his parents' marriage, and I do not suggest that the sentence arrived at by the jury was the only sentence it could have reached. It was, however, the sentence that the jury did reach after a fair and very extensive trial and sentencing proceeding, complete instructions by the court on the applicable law, vigorous argument by counsel, and *solemn deliberation* and weighing of the aggravating and mitigating circumstances by the jury. I see no reason,

constitutional or otherwise, to disturb the jury's determination, nor to overrule the legislative decision to allow the age factor to be *one consideration* in that determination.

For the foregoing reasons, I would affirm all of appellant's convictions, as well as his two judgments of sentence of death.

McDERMOTT, J., joins in this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I must dissent. The jury has found more than one aggravating circumstance and one or more unspecified mitigating circumstances and determined that the aggravating circumstances outweigh the unspecified mitigating circumstances, thus requiring the imposition of the death penalty. The majority has properly concluded that "... one of the aggravating circumstances relied upon by the jury in setting the sentence of death is not, therefore, supported by the evidence ..." (J–190–86–11), but the majority unexplainedly concludes the sentence by saying, "... we are required under the sentencing statute to vacate the sentence of death and remand to the Court of Common Pleas for appellant to be sentenced to life imprisonment. 42 Pa.C.S.A. § 9711(h)."

I do not read the cited subsection so restrictively. 42 Pa.C.S.A. § 9711(h) reads at (3):

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d).

The evidence before us most assuredly, and confirmed by the majority, fully supports "the finding of an aggravating circumstance specified in subsection (d)," that being aggravating circumstance # 10, the conviction of another felony for which a sentence of life imprisonment or death was imposable.

The majority reads 42 Pa.C.S.A. § 9711(h)(3)(ii) as directing that if *any one* aggravating circumstance found by the jury is not supported by the evidence then the penalty of death must be set aside and life imprisonment be imposed *where there are mitigating circumstances* irrespective of the number of remaining aggravating circumstances supported by the evidence.

Perhaps the majority espouses this narrowest of readings because it feels inadequate to scan the record and conclude whether the jury could, or would, have found the remaining aggravating circumstance or circumstances outweighing the unspecified but identifiable mitigating circumstances.

I feel no such inadequacy. In fact, I believe it is our responsibility to determine whether the remaining aggravating circumstance or circumstances outweigh, beyond a reasonable doubt, the mitigating circumstances appearing of record.

I read § 9711(h)(ii) as directing us to set aside the death penalty only *if we can not find an aggravating circumstance supported by the evidence.* Since we have found an aggravating circumstance supported by the evidence, I believe it is our duty to determine whether the jury would, or could, find, beyond a reasonable doubt, that the supported aggravating circumstance or circumstances outweigh the mitigating circumstances found in the record.[1]

Any other conclusion could lead to ridiculous results such as the finding of all twelve aggravating circumstances and only one mitigating circumstance (youth) by the jury, but

---

1. I find support in this conclusion by language found in the recent United States Supreme Court pronouncements in *Charles E. Strickland, Superintendent, Florida State Prison, et al., Petitioners v. David Leroy Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

 When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors (the improperly found aggravating circumstances in the case sub judice), the sentencer—*including an appellate court,* to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. (Emphasis and parenthetical expression added.)

our setting aside of one aggravating circumstance would require the vacation of the death penalty, because we are incapable of determining that a jury would, without a reasonable doubt, determine that the remaining eleven aggravating circumstances outweigh the one mitigating circumstance. I cannot believe that our legislature or our jurisprudence intends such an emasculation of our abilities on review of the sentence of death.

If such is the conclusion of our majority, then I urge the legislature immediately to review § 9711 and affirm the majority's holding or clarify the statute to conform to the will of the legislature.

In reviewing the record, I have no reticence in concluding that the Appellant was properly convicted and that the aggravating circumstance supported by the evidence outweighs, without a reasonable doubt, the mitigating circumstances appearing of record. I would affirm the convictions of murders of the first degree, reverse the two convictions as to the two counts of kidnapping (I concur with the majority in this respect), and affirm the penalty of death.

Finally, I strenuously object to the loose use of the phrase "the issue of the constitutionality of the execution of children" (J–109–86–12). There is only one recorded instance in the constitutional history of our Commonwealth that we have ever strapped a child (under the age of 18) to the electric chair and pulled the switch. If we mean by this misleading phrase "the constitutional issue of executing *adults* for crimes committed when they were children" then let's say so in order that the whole world, English speaking and non-English speaking people, understand us clearly. I join Mr. Justice Larsen's reasoning as it appears on pages 11 through 15 of his Dissenting Opinion in holding that the death penalty is constitutional when applied to persons for crimes committed when they were juveniles.

For the foregoing reasons, I would affirm the two convictions of murder of the first degree and the penalty of death.