J-A24018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOANNA CHARLES | |
| Appellant | No. 1344 WDA 2016 |

Appeal from the Judgment of Sentence Dated June 20, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003957-2015

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 12, 2017**

Appellant, Joanna Charles, appeals from the judgment of sentence imposed after a jury convicted her of theft by failure to make a required distribution of funds received, and misapplication of entrusted property.[1] We affirm.

The charges against Appellant arose from her role as the administrator of her father's estate. The Commonwealth alleged that during a seven-month period from August 2011 to January 2012, Appellant misappropriated approximately $22,000. A jury trial commenced on February 29, 2016, and on March 1, 2016, the jury returned its guilty verdicts.

The trial court summarized the facts as follows:

---

[1] 18 Pa.C.S. §§ 3927(a) and 4113(a).

In mid-August of 2011, James Charles, Sr. passed away intestate. He was survived by three adult children: Appellant, James Charles, Jr., and Jamesina Charles. Charles, Jr. retained the services of Attorney Sally Frick to handle his father's estate. Appellant's siblings signed a renunciation, and Appellant was appointed as administrator of the estate.

The estate included a home in Penn Hills, a large amount of cash, and several vehicles. At the initial meeting between Attorney Frick, Appellant, and Jamesina at the decedent's home, Jamesina and Appellant recovered $8000 cash. These funds were turned over to Attorney Frick to be placed in an estate account. Additionally, $14,000 cash was found on the decedent's person at the time of his death, and the coroner's office turned over the cash to Jamesina. Jamesina used $4000 from these funds to pay for funeral expenses. In September 2011, Jamesina sent the remaining funds ($10,000) to Appellant, with the understanding that the funds would be made part of her father's estate account, which was maintained by Attorney Frick. However, Appellant retained possession of those funds.

On September 28, 2011, Appellant visited Attorney Frick at her office, and informed her that her services were no longer needed. Attorney Frick relinquished the $8000 cash and estate documents to Appellant. Appellant never hired another attorney. Consequently, Attorney Frick remained the counsel of record, and though she tried to contact Appellant to ensure she hired a new attorney, she was unable to reach Appellant.

As part of her duties as administrator of her father's estate, Appellant was provided with funds to be used to prepare the home for sale, and to be distributed amongst family members according to eventual court order. These funds included the $8000 cash from Attorney Frick, and the $10,000 from Jamesina. Additionally, Appellant withdrew $4600 from her father's checking account, and deposited it into a new estate account with other smaller deposits, on which she was the only signatory. Appellant paid approximately $2,500 of those funds to a family friend, Colin Wesley Carr, to fix certain aspects of the decedent's home. Additionally, she paid for Carr's airfare from New York City, food while he stayed in the decedent's home, and all supplies for the home repairs. She also made some utility

payments for the house, as detailed in the Commonwealth Exhibit 10.

However, the remaining funds were not used in the administration of the estate, and were not saved for later distribution to the estate. Instead, Appellant mixed the estate funds with her personal account and used the funds for personal matters. As such, no funds remain for the administration of the estate or for distribution under any court order.

Trial Ct. Op., 2/21/17, at 4-6 (citations to notes of testimony omitted).

At sentencing, Appellant presented Colin Carr, who, with respect to restitution, testified to making repairs at the decedent's home and being paid for his services and expenses. *See* N.T., 4/25/16, 5-16. On June 20, 2016, the trial court sentenced Appellant to five years' probation and ordered her to pay restitution of $17,910 to the estate.[2] Appellant filed a timely post-sentence motion, which the trial court denied on August 26, 2016. On September 6, 2016, Appellant filed this appeal.

Appellant raises four issues for review:

1. Whether the Commonwealth produced sufficient evidence to sustain a guilty verdict for Theft by Failure to Make Required Distribution of Funds Received?

2. Whether the Commonwealth produced sufficient evidence to sustain a guilty verdict for Misapplication of Entrusted Property?

3. Whether the verdict is against the weight of the evidence presented?

_____

[2] The sentence was imposed at Count 1 (theft by failure to make required distribution of funds), with no further penalty at Count 2 (misapplication of entrusted property).

- 3 -

4. Whether the trial court erred in ordering restitution where questions as to the composition and proper distribution of the estate were not first resolved in Orphan's court?

Appellant's Brief at 3.

## Sufficiency and Weight of the Evidence

In reviewing Appellant's first three claims challenging the sufficiency and weight of the evidence, we are mindful of the following:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (citations, quotation marks, and footnote omitted).

In her first two issues, Appellant argues that the evidence was insufficient to support her two convictions. At their essence, Appellant's arguments are that she lacked the intent necessary to support the convictions. In part, she blames Attorney Frick, who she dismissed, for failing to provide her with proper guidance. With regard to theft by failure to make a required distribution of funds received, Appellant additionally asserts that the evidence was insufficient because she never failed to "make a required payment or disposition." Appellant's Brief at 13, 17-18.

The statute defining theft by failure to make a required distribution of funds received provides:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he **intentionally** deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S. § 3927(a) (emphasis added). The statute defining misapplication of entrusted property states:

> A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he **knows** is unlawful and involves substantial

- 5 -

> risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

18 Pa.C.S. § 4113 (emphasis added).

Viewing the record in a light most favorable to the Commonwealth as the verdict-winner, we find no merit to Appellant's sufficiency claims, as the evidence was sufficient for the jury to infer Appellant's intent relative to both crimes. Appellant admitted that she agreed to be the administrator of her father's estate and took sole possession of approximately $22,600, comprised of her father's cash and bank account. N.T., 2/29/16, at 98-99. She testified that she made a few checks payable to herself, and spent money from the estate, including "about $3,000" on furniture for her mother, and other expenditures for "maybe a couple other family members." N.T., 2/29/16, at 96, 100. She stated that the funds were "kind of all mixed in together." *Id.* She also testified that all of the cash and funds in the bank account that had been in her possession were "all gone," stating that "[a]ll of it was used." *Id.* at 102. This evidence was sufficient to support Appellant's convictions under both statutes. *See Commonwealth v. Green*, 162 A.3d 509, 523 (Pa. Super. 2017) (*en banc*) (finding evidence sufficient when viewing the evidence in a light most favorable to the verdict winner, and reiterating that we may not weigh the evidence and substitute our judgment for the fact-finder who is free to believe all, part, or none of the evidence).

We reject Appellant's contention that she never failed to make a distribution as disingenuous. By dissipating the funds, Appellant made it impossible for there to be a distribution of estate funds to her father's heirs. As the trial court stated:

> Regardless of Attorney Frick's actions or the fact that a court order was not yet prepared for disbursement [of the estate funds to the heirs], Appellant had possession of those funds and was aware that these funds were to be used solely for the administration of her father's estate. Nonetheless, Appellant used the funds for her own personal purposes, permanently depriving her father's estate of those funds.

Trial Ct. Op., 2/21/17, at 9.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the Commonwealth, and drawing all inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Aulisio*, 522 A.2d 1075 (Pa. 1987). On the record in this case, the jury could reasonably have found that Appellant obtained the estate funds upon agreement and subject to a known legal obligation to make disposition for the estate, but intentionally dealt with the funds as her own and failed to make the required disposition of the estate by depleting it — conduct sufficient to prove theft by failure to make a required distribution of funds received. The jury also reasonably could have found that Appellant disposed of funds that were entrusted to her as estate administrator in a manner which she knew was

unlawful and involved substantial risk of loss or detriment to the estate or its beneficiaries — conduct sufficient to prove misapplication of entrusted property.

In her third issue, Appellant argues that her convictions were against the weight of the evidence.[3]  Without citing any meaningful legal authority, Appellant repeats her sufficiency argument and states that "the jury's verdict was against the weight of the evidence as both of the counts at issue requires [sic] intent on the part of the defendant as well as an actual unlawful taking of property."  Appellant's Brief at 28.  The Commonwealth contends that Appellant has waived her weight claim because it is insufficiently argued.  Without reaching the question of waiver, we conclude that Appellant's weight claim fails for the reasons stated by the trial court in its opinion.  **See** Trial Ct. Op., 2/21/17, at 8-10 (recounting applicable legal authority and relevant evidence from Appellant's trial, and concluding that "[t]he evidence presented during trial established Appellant's guilt beyond a reasonable doubt, and the Trial Court properly denied the motion for a new trial as the verdict was not against the weight of the evidence").

---

[3] As required by Pa.R.Crim.P. 607, Appellant preserved this issue by raising it with the trial court in her post-sentence motion.

## Restitution

In her fourth issue, Appellant argues that the trial court erred by awarding restitution when "the estate was not properly determined in a proceeding in Orphan's Court." Appellant's Brief at 28. She states:

> [T]he trial court could not properly determine restitution where the proper distribution and identities of the person to benefit from the estate were not correctly determined in Orphans' court. It is Orphan's court's clear function to resolve such questions.

*Id.* at 30. Appellant additionally contends that by filing charges against her, the Commonwealth "encourages individuals to file criminal charges in estate matters to avoid the fees and complications of Orphan's court." *Id.* at 15.

The Commonwealth responds by emphasizing that Appellant was convicted of theft, and that the Crimes Code, 18 Pa.C.S. § 1106, mandates restitution where "property has been stolen or converted." Commonwealth's Brief at 10-11, 26-28. Section 1106 provides, in relevant part:

> **(a)** **General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> **(b)** **Condition of probation or parole.**—Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

The Commonwealth argues that "Appellant fails to recognize that this issue involves the sentence of restitution imposed for her criminal conviction for

theft . . . and the orphans' court division does not have jurisdiction over criminal matters." Commonwealth's Brief at 27. We agree.

This Court recently explained:

In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. . . .

Restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of his sentence. Where that statutory authority exists, however, the imposition of restitution is vested within the sound discretion of the sentencing judge.

. . . In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S. § 1106(a), or as a condition of probation, 42 Pa.C.S. § 9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim.

*Commonwealth v. Holmes*, 155 A.3d 69, 78-79 (Pa. Super. 2017) (quoted and internal citations omitted). Consistent with *Holmes*, we discern no abuse of discretion by the trial court in making restitution part of Appellant's sentence. As the Commonwealth points out, Appellant errs in treating the restitution as an "award" made to the beneficiaries of the estate. Although the restitution is to be paid to the estate, it is neither an award of damages nor a distribution of estate assets; it is a sentence imposed on Appellant for

her criminal conduct. Because an Orphans' Court has no role in imposition or enforcement of such a sentence, there was no error in imposing the sentence without the Orphans' Court's involvement.

The restitution amount is supported by the record. The Commonwealth requested restitution of $21,910, consisting of the $10,000 found on the decedent's person (net after $4,000 was paid for funeral expenses), $8,000 cash recovered from the decedent's home, and $3,910 taken from a bank account. *See* N.T., 6/20/16, at 6. Appellant testified that she paid "$5,000 or more" for Mr. Carr to complete repairs to the home. N.T., 2/29/16, at 89. Mr. Carr testified that Appellant paid him $2,500 cash for various repairs that included plumbing, drywall, and yard work. N.T., 4/25/16, at 8. He stated that he "did a lot of work" that "took . . . about two months to do"; that he "didn't even pay for any food, she took care of everything," including tools and materials; and that because he was living in New York City at the time, Appellant twice paid for his airfare. *Id.* at 4, 8-14. The trial court credited this testimony and therefore reduced the restitution amount to $17,910. Trial Ct. Op., 2/21/17, at 12. The trial record supports the court's calculations. Accordingly, we find no error in the trial court's order of restitution to the decedent's estate.

For all of the reasons stated above, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/12/2017