**Lemuel Marion SHIRLEY, Jr., Appellant,**

v.

**STATE OF NORTH CAROLINA et al., Appellee.**

No. 74–2385.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1975.

Decided Oct. 6, 1975.

Barry Nakell, Chapel Hill, N. C. [court-appointed counsel], for appellant.

Richard N. League, Asst. Atty. Gen. of N. C., and (Rufus L. Edmisten, Atty. Gen. of N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from denial of habeas relief. Shirley, sentenced to seven years for violation of state narcotic laws, attacks his conviction on several constitutional grounds [1] only one of which we

---

1. Shirley challenged the validity of the search warrant, alleged that the state used perjured expert testimony to convict him, objected to an alleged denial of speedy trial, and attacked on due process grounds the handling of evidence by the state. Although some of these issues appear to have substantial merit and have concerned us, we need not reach them.

need discuss. Ordinarily the granting or denial of a continuance is within the discretion of the trial judge, but the need for postponement was here so exigent that denial amounted to an abuse of discretion of constitutional dimension.[2] For refusal to grant a continuance to secure the presence of an essential defense witness, we hold the conviction invalid, and on remand, direct the issuance of the writ unless the state elects to retry Shirley.

## I.

In August 1969 petitioner lived at 2515 Clark Avenue in Raleigh, North Carolina. Living with him were his mother, his aunt,[3] and two other persons, Jack Edward Gill, Jr., and James Earl Walker.

Three officers of the Raleigh Police Department searched Shirley's residence on August 16, 1969. They seized a number of bottles containing pills and tablets, a pot and pan caked with what was believed to be cooked marijuana, a number of glassine bags filled with a vegetable substance, a shoeshine kit containing a hypodermic needle and syringe, a black leather bag containing a suspicious substance and various other items. Gill and Walker were present during the search.

Shirley was arrested and charged with illegal possession of marijuana and illegal possession of a hypodermic needle and syringe. His case was originally scheduled for preliminary hearing on September 10, 1969, but was continued until September 24 at the state's request in order to complete its laboratory report on the substances seized. At Shirley's request the preliminary hearing was twice again postponed, until October 8, 1969, and then October 22, 1969, to permit the defense time to have the alleged contraband analyzed. On October 22, 1969, a preliminary hearing was held, with the defense permitted an additional two weeks for further chemical analysis. Petitioner was indicted by the grand jury on January 6, 1970, for possession of marijuana and LSD.

After petitioner's indictment, there occurred an unexplained and unaccountable delay in bringing his case to trial. Under North Carolina practice, sanctioned by statute,[4] the prosecutor controls the criminal calendar and decides when to set cases for trial. He must file his calendar at least one week before trial. Until he does so criminal defendants are unable to subpoena witnesses, for the statute requires defense subpoenas to state the date of trial, a detail which, of course, cannot be known until the case is calendared. *Id.*

On May 4, 1971, almost 21 months after the search of petitioner's home and 16 months after his indictment, the state prosecutor set petitioner's case for trial on May 11, 1971.

---

**2.** We base decision on the traditional fundamental fairness concept inherent in the due process clause of the fourteenth amendment. We note, however, that petitioner's rights under the sixth amendment may also be involved. The continuance requested by counsel was to obtain the presence of a key defense witness. Thus, while the "fundamental fairness" concept of due process of law is adequate to cover petitioner's claim, perhaps the compulsory process clause of the sixth amendment defines with greater particularity the scope of petitioner's rights. *See, e. g.,* Westen, The Compulsory Process Clause, 73 Mich.L. Rev. 73 (1974).

**3.** Apparently, petitioner's mother and aunt were unaware of contraband in the house, and the state did not charge them with participation or call them as witnesses.

**4.** § 7A–49.3. *Calendar for criminal trial sessions.*—(a) At least one week before the beginning of any session of the superior court for the trial of criminal cases, the solicitor shall file with the clerk of superior court a calendar of the cases he intends to call for trial at that session. The calendar shall fix a day for the trial of each case listed thereon.

. . .

(b) All witnesses shall be subpoenaed to appear on the date listed for the trial of the case in which they are witnesses. Witnesses shall not be entitled to prove their attendance for any day or days prior to the day on which the case is set for trial, unless otherwise ordered by the presiding judge.

(c) Nothing in this section shall be construed to affect the authority of the court in the call of cases for trial.

Upon learning of the trial date, petitioner's attorney immediately made efforts to secure the presence of Jack Edward Gill, Jr., who had lived in the house and was present when it was searched. Gill was then residing in California, and thus was beyond the reach of North Carolina process. Reached by telephone, Gill voluntarily agreed to testify for Shirley and promptly began his journey to North Carolina. En route, however, he was arrested by officers of the United States Army for being absent without leave and confined in the stockade at Fort Bliss, Texas. Counsel for Shirley began efforts to have Gill released from military custody for an appearance at Shirley's trial. It was not until May 11, the day the trial was to begin, that the commanding officer at Fort Bliss telegraphed counsel that Gill "is not available to appear as a witness at Raleigh, North Carolina on the date you requested."

Petitioner's case was called in the Wake County Superior Court on May 11, 1971, as scheduled. Gill's absence was immediately brought to the attention of the court *by the prosecutor* who himself suggested delay. The trial judge nevertheless ordered that the jury be selected reserving decision on the motion to continue.[5]

The next day, May 12, 1971, counsel for petitioner filed a written motion for continuance on the grounds that a material witness for the defense was absent.[6] The motion set forth counsel's understanding that Gill's difficulties with the Army would be disposed of within two weeks, and that Gill's future availability would be dependent upon his punishment, if found guilty. Counsel's written motion recited that the absent witness should be able to testify on two issues critically important to the defense: occupancy of the room where the contraband was found and possession and ownership thereof. In addition, the motion specifically stated that "[t]here is no other witness to substantiate the contentions of the defendant in these matters available." The vital importance of Gill's testimony to petitioner's defense could not have escaped the trial judge. Nevertheless, despite the critical nature of Gill's anticipated testimony and notwithstanding the prosecution's 16-month delay in bringing the case to trial, the trial judge denied the motion and ordered the trial to proceed.

At trial the only evidence of ownership and possession of the contraband was the testimony of James Earl Walker, who shared the residence with Shirley and missing witness Gill.

On May 14, 1971, the jury returned guilty verdicts on both counts, and, even though petitioner appears to have had no prior criminal record, he was sentenced

---

**5.** The trial transcript contains the following exchange between the trial judge and the prosecutor, Mr. Ransdell:

SOL. [Solicitor] RANSDELL: 69 Cr. 37894 Lemuel Marion Shirley, Jr., is charged with possession of narcotic drugs, to wit, Marijuana. May it please your Honor *we have a material witness that is in the Army.*
THE COURT: I think we should retire to chambers if you have some motion.
SOL. RANSDELL: *I was going to ask that it not be started this afternoon.* If this man doesn't arrive we'll be left high and dry. We would hate to select the jury this afternoon. THE COURT: Let's go ahead and select the jury this afternoon. We'll reserve your motion until tomorrow. *Put a jury in the box.* (emphasis added).

**6.** The defendant, through his attorney, moves to continue these criminal actions for the reason that a very material witness, Jack E. Gill, Jr., is not available and shows as follows:

1. That the said witness is material in the fact that he was present at the time of the search and can testify what was taking place at that time, can testify as to the occupancy of the room or quarters searched and can testify pertaining to the possession and ownership of the vegetable matter found, together with the parts of the room used by each occupant. *There is no other witness to substantiate the contentions of the defendant in these matters available.*

2. The defendant's attorney talked with said witness on May 11, 1971, and he confirmed that he would testify to these matters.

App. 7 (emphasis added).

to seven years imprisonment—five years on the LSD conviction, two years on the marijuana conviction.[7]

After petitioner's conviction was affirmed on appeal, a motion for a new trial was made on March 16, 1973, and, after a hearing, was denied. Post conviction remedies in the state court were pursued and exhausted.

Petitioner then brought this habeas corpus action in the district court. After a full evidentiary hearing, the district court denied relief, but certified that there exists probable cause for appeal.

## II.

■ We recognize, of course, that the decision to grant or deny a continuance is normally within the discretion of the trial judge. This rule is one of general application, and is grounded in precedent, tradition, and common sense. But discretion can be abused, and in an unusual case the denial of a continuance may be so arbitrary and so fundamentally unfair as to invoke the Constitution.

The Supreme Court addressed this subject in *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964):

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Id.* at 589, 84 S.Ct. at 849 (citations omitted).

■ We are particularly struck by the fact that petitioner's trial had already been delayed by the state almost 16 months. When at last the case was set for trial, counsel for petitioner at the earliest opportunity seconded the prosecutor's suggestion that trial be postponed until such time as it could be determined whether Gill would be available to testify. His proffer demonstrated to the judge that Gill was the *only* disinterested defense witness and that his testimony was essential. The motion was not opposed by the state. Counsel for petitioner from the beginning was diligent in attempting to secure Gill's presence, including negotiations with appropriate Army officials, and there was no indication that his efforts would ultimately fail. In this context we view the trial judge's expressed concern that Gill might never be available so overstated as to be of constitutional significance. An exercise of discretion may not rest on a complete misapprehension of the facts. The assigned reasons for denial of the continuance are without any support in the record.[8]

Possession is the gravamen of the offenses for which petitioner was convicted. Petitioner's written motion for the continuance specifically stated that Gill could be expected to testify both as to who lived in the house and who owned the drugs. Gill, Walker, and petitioner all resided at the house at the time of the search. Contraband was found there, and the suggestion must surely be that if the drugs did not belong to Shirley, they belonged to one of the other

---

7. The original sentence was even heavier. Initially the trial judge sentenced petitioner to five years for possession of LSD and four to five years for possession of marijuana. The North Carolina Court of Appeals found the sentence for marijuana excessive and remanded for resentencing.

8. The Court finds that the witness may not be available as a witness within a reasonable time in view of the charges against him; that efforts were not timely made through military authorities to assure his attendance. For these and other reasons, the motion is denied.

two. Yet only one of these, Walker, was available to testify on May 11, 1971, and his testimony established the essential link between Shirley and the drugs. Given Walker's incriminating evidence, Gill was an essential witness to refute the charge of possession.

Developments following Shirley's trial delineate further the manifest injustice of denial of the continuance. It was stipulated by the parties in the district court that Gill was discharged from military custody in August 1971, and would then have been available to testify. In sworn testimony in the habeas proceeding Gill testified that he saw Walker, *not* Shirley, in possession of drugs, and that he knew as a fact that any drugs in the Shirley home belonged to Walker, *not* Shirley. Moreover, Gill has sworn that had he been at Shirley's trial, he would have so testified. Walker, the principal state witness identifying Shirley as the owner of the drugs, has under oath provided some surprises of his own. At the evidentiary hearing below, Walker testified that just before he took the stand in Shirley's trial, the prosecutor informed him that if his testimony did not result in petitioner's conviction, Walker himself would be tried for the crimes. Walker has, in addition, testified that this threat did influence his testimony, and that parts of his trial testimony were not true. Had Gill testified, the jury would have had to choose between his credibility and that of Walker. Believing Gill would have resulted in acquittal.

Ultimately, however, we need neither hypothesize nor make our point with benefit of hindsight. From information available to the trial judge at the time petitioner's motion for continuance was made, Gill's testimony promised to be vital to the defense. On the peculiar facts of this case we are convinced that the failure to grant the continuance was error and an abuse of discretion of constitutional dimension.

For violation of the fundamental fairness standard implicit in the due process clause of the fourteenth amendment, the petitioner Shirley's conviction cannot

stand. On remand, the district court will issue the writ unless the state promptly elects to retry the petitioner.

*Reversed and remanded.*