Elijah WHITE, Petitioner,

v.

The STATE OF SOUTH CAROLINA and the Attorney General of the State of South Carolina, T. Travis Medlock, Respondents.

Civ. A. No. 3:87–2578–15(B).

United States District Court, D. South Carolina, Columbia Division.

Dec. 15, 1988.

On Motion to Reconsider Jan. 30, 1989.

Elijah White, pro se.

Frank L. Valenta, Jr., Asst. Atty. Gen., Columbia, S.C., for respondents.

### ORDER

HAMILTON, District Judge.

Petitioner, a state prisoner confined by the South Carolina Department of Corrections, has filed the present action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[1] Petitioner complains that the solicitor who prosecuted petitioner's case tampered with a material witness for the defense. Petitioner also alleges that the purported witness tampering constituted an unconstitutional denial of his right to compulsory process. Petitioner also contends that the chief prosecutorial witness during his trial, the victim of his criminal sexual conduct in the first degree, commit-

ted perjury and that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution during his trial in state court on the charge for which he now stands convicted.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02(b)(2)(C), D.S.C., the matter was referred to Magistrate Henry M. Herlong, Jr., for a report and recommendation. That report and recommendation, as filed May 20, 1988, is before the court at this time. In his report, Magistrate Herlong recommended that respondents' motion for summary judgment be granted. Petitioner filed objections to the magistrate's report and recommendation on June 2, 1988. Pursuant to 28 U.S. C. § 636(b)(1)(C), the court must make a *de novo* determination of those portions of the magistrate's report and recommendation to which the petitioner has objected. *Camby v. Davis*, 718 F.2d 198 (4th Cir.1983). After reviewing the record in this case, the magistrate's report and recommendation, the petitioner's objections thereto, and the applicable law, the court concludes that the objections of petitioner do not constitute a violation of his right to due process. Therefore, the court is constrained to grant respondents' motion for summary judgment.

Elijah White, Jr., the petitioner herein, was indicted at the August 1982 term of the Grand Jury for the Court of General Sessions of Richland County, South Carolina, for the felony of criminal sexual conduct in the first degree. A jury trial was held on November 8–10, 1982, before the Honorable E.C. Burnett, III, presiding judge. After hearing the evidence in the case, petitioner was found guilty as charged and sentenced by the court to confinement in the South Carolina Department of Corrections for a period of thirty years.

At the trial, the victim, Robin Taylor, testified that the petitioner and the co-defendant followed her down Main Street in Columbia and eventually pulled her into a deserted building where she was raped by

---

1. Petitioner is proceeding *pro se* on his petition      for a writ of habeas corpus.

petitioner. Petitioner's version of the event differs in that he claims the victim agreed to trade sex for marijuana and thus accompanied him and his co-defendant down Main Street to the building where the alleged rape occurred.

The petitioner thereafter filed a timely notice of intent to appeal, and an appeal was perfected by appointed counsel of the office of appellate defense. In that appeal, the petitioner raised the following questions:

I. Whether the trial judge erred in failing to grant appellant's motion and offer of proof as to prior sexual activity of the victim?

II. Whether the trial judge erred in failing to grant appellant's motion for a continuance when the transcript of record substantiates the fact that the crucial defense witness was subpoenaed and failed to appear in court?

The South Carolina Supreme Court, after receiving briefs from both parties, affirmed the conviction pursuant to Rule 23 of the rules of practice of that court. *State v. White*, Memo.Op. No. 84–MO–68 (filed May 1, 1984).

Petitioner thereafter filed an application for post-conviction relief with the clerk of court for Richland County on May 24, 1985. This original application was amended by subsequent pleadings filed October 1, October 31, and November 5, 1985. In this application, the petitioner alleged that he was being held in custody unlawfully for the following reasons:

I. Because rape is a capital offense, he was entitled to representation by two attorneys.

II. The defense of his case should have been handled by the Richland County Public Defender himself, rather than being handled by an assistant public defender.

III. The trial court erred when it failed to inform petitioner of his right to be represented by two attorneys.

IV. The prosecuting attorney tampered with a crucial defense witness under subpoena by the petitioner by telling such witness that he would be arrested on an outstanding bench warrant if he appeared on behalf of the petitioner.

V. The state's key prosecuting witness knowingly committed perjury.

VI. The state's closing argument was prejudicial.

VII. The jury failed to write its finding of guilt on the back of the indictment form.

VIII. Ineffective assistance of counsel
a. Counsel should have appealed all denials of pretrial motions to the state supreme court.
b. Petitioner's attorney failed to make sure that James Barnett appeared as a witness.
c. Counsel was ineffective for not having moved for a mistrial based on the deputy solicitor having tampered with the defense witness.

IX. Petitioner was denied a fair trial because the deputy solicitor tampered with James Barnett, a defense witness.

X. Petitioner's arrest and subsequent conviction were the result of a conspiracy against him by the solicitor's office and various law enforcement agencies. Petitioner's co-defendant was offered favorable treatment if he would testify against the petitioner.

XI. Petitioner was denied his right to a fair trial when sheriff's deputies told Shorty Portee that he did not need to come to the second day of the trial.

XII. Petitioner was denied a fair trial because the deputy solicitor tampered with Shorty Portee, a defense witness.

Respondents made their return on September 12, 1985, requesting that an evidentiary hearing be held. An evidentiary hearing was held on March 3–4, 1986, at which time the petitioner was present and represented by his appointed attorneys, Robert E. Salane, David T. Duff, and David E. Dubberly, all of the Richland County Bar. The trial court, after reviewing all the evidence, issued a written order of dismissal dated

May 2, 1986, denying petitioner's application.

Petitioner thereafter filed a timely notice of intent to appeal the denial of relief by the post-conviction relief trial court, and such appeal was perfected by the South Carolina Office of Appellate Defense. Petitioner's attorney filed a petition for writ of certiorari to the South Carolina Supreme Court on October 9, 1986. In that appeal, the petitioner raised the following issues:

I. Whether the lower court erred in denying petitioner due process of law when it denied and dismissed petitioner's application for post-conviction relief where the record shows petitioner was denied his right to compulsory process of witnesses in his behalf through the actions of either the prosecuting attorney or sheriff's deputies by insuring the witnesses subpoenaed by petitioner would not appear in court, in violation of petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the South Carolina Constitution?

II. Whether the lower court erred in denying petitioner due process of law when it denied and dismissed petitioner's application for post-conviction relief where the record shows that the prosecuting witness committed perjury at petitioner's trial, in violation of petitioner's right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the South Carolina Constitution?

Respondents made their return to the petition for writ of certiorari on November 12, 1986. The South Carolina Supreme Court issued an order denying the petition on January 7, 1987. Petitioner filed a petition for habeas corpus relief in federal court on September 10, 1987.

Petitioner contends that the prosecutor in his case, Deputy Solicitor Steve Brown, tampered with a material witness for the

defense during his trial, James Barnett. Apparently, Barnett was not available to testify during petitioner's trial in state court, although he had been subpoenaed for the duration of petitioner's trial. Petitioner alleges that Barnett saw petitioner, the co-defendant, and the victim walking together when they stopped to talk to Barnett on the day of the alleged crime. If Barnett's testimony were true, it would have possibly contradicted the victim's testimony.[2]

Although Barnett was present on the first day of petitioner's trial, he did not return on the second or final day of the trial. Petitioner claims that Barnett did not return on the second day of his trial because Deputy Solicitor Brown intercepted Barnett in the Richland County Judicial Center (courthouse) and convinced him not to appear at the trial.

In support of their motion for summary judgment, respondents submit that this allegation has no merit because Barnett testified at the state post-conviction relief hearing (PCR hearing) that he had not seen Deputy Solicitor Brown when he was in the courthouse. Although conceding that Barnett testified at the PCR hearing that he had seen the petitioner, his co-defendant, and a woman nearby on Main Street on the day of the incident, respondents nevertheless argue that Barnett was unable to identify the woman as being the victim and could not testify whether the woman was, in fact, with the petitioner and his co-defendant.

The magistrate concluded that Barnett's failure to return on the second day of petitioner's trial was not due to any outside influences, but rather was due to Barnett's desire to return to work because he needed money. The magistrate further determined that Barnett's absence on the third day of trial was also not due to witness tampering by Deputy Solicitor Brown. At the PCR hearing, Barnett initially stated that he did not return on the third day of trial because two county policemen came

---

**2.** Barnett's testimony at the state PCR hearing indicated that he could not identify the victim. Thus, it is not altogether clear that the woman he allegedly saw with the petitioner and his co-defendant, on the date of the alleged rape, was the victim.

and told him not to return to the trial. Nevertheless, Barnett thereafter admitted that he had not actually seen the policemen, but had heard through a second possible witness, Shorty Portee, that the police had been there looking for him and had said that there was no need for Barnett to return to the trial. Stating Barnett had unequivocally testified at the PCR hearing that he had no direct contact with either the police or the solicitor's office (including any contact with prosecuting attorney Brown) on the date in question, the magistrate concluded that petitioner's allegation was meritless.

Petitioner objects to the magistrate's recommendation, arguing that his wife, Janice White, saw Deputy Solicitor Brown and Barnett talking inside the courthouse on the morning of the second day of petitioner's trial and that his original trial counsel, Douglas Strickler, seemed to remember Brown and Barnett talking and also seemed to remember saying something to Deputy Solicitor Brown about such conversations. Finally, although Barnett testified at the PCR hearing that he did not talk to Brown, petitioner nevertheless submits that Barnett did admit he talked with the defense investigator assigned to petitioner's case, Charles Cannon.

■ The relevant inquiry of a federal habeas court, unlike that of an appellate court on direct review, is necessarily a limited one due to the co-equal status of the judicial systems of the several states. Specifically, review of a state court criminal conviction is limited to the very narrow standard of the due process clause of the Fourteenth Amendment. *Trussel v. Estelle*, 699 F.2d 256, 259 (5th Cir.1983), *cert. denied*, 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983). Accordingly, a state court conviction should only be overturned for a " 'failure to observe that fundamental fairness essential to the very concept of justice.' " *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)).

■ A further constraint on federal habeas review of state court convictions is found in 28 U.S.C. § 2254(d). Under that section, state court findings of fact are presumed correct, *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981), unless petitioner can show an evidentiary hearing is mandatory on an issue of fact under the criteria established in § 2254(d) or in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *Roach v. Martin*, 757 F.2d 1463, 1469 (4th Cir.1985), *cert. denied*, 474 U.S. 1039, 106 S.Ct. 645, 88 L.Ed.2d 637 (1986). Although admittedly, the distinction between "fact" and "law" and "mixtures of fact and law" is a queasy one, *Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 615 (4th Cir.), *cert. denied*, 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986), it is nonetheless clear that whether the prosecuting attorney allegedly tampered with a material defense witness during petitioner's trial is an issue of fact entitled to a presumption of correctness under § 2254(d). *See Sumner v. Mata, supra.*

■ At the PCR hearing held on March 3–4, 1986, the state trial judge determined that the petitioner had not carried his burden of proving that Barnett had been improperly instructed by Deputy Solicitor Brown, or anyone acting at his behest, from returning on the second day of petitioner's trial. Janice White, wife of petitioner, testified at the PCR hearing that she had seen Deputy Solicitor Brown talking with Barnett inside the courthouse on the morning of the second day of petitioner's trial. Charles Cannon, defense investigator, also testified that Barnett told him he did not return on the second day of petitioner's trial because the evidence he had was not helpful to the petitioner and because he was told by Brown and Investigator Chambers of the Columbia Police Department that he did not have to appear. Barnett, however, the alleged target of the tampering, testified that he had never seen Deputy Solicitor Brown and did not know what Brown even looked like.

Apparently discounting the testimony of Mrs. White, investigator Cannon, and peti-

tioner's original trial counsel,[3] the state court determined that Barnett did not return on the second day because he had gotten word he was not needed. The court also found credible Barnett's declaration that he had never seen Brown and did not even know what he looked like. As the state court's finding of fact is supported by the record of the PCR hearing as a whole, this court is bound by its factual determination—notwithstanding potentially conflicting evidence—that Barnett had never seen Deputy Solicitor Brown and thus could not have been tampered with by the deputy solicitor.[4] Accordingly, the court finds that petitioner's evidence is insufficient to implicate the due process clause of the Fourteenth Amendment as it fails to reveal any fundamental unfairness in the prosecution of his case.

Petitioner next contends he was denied his right to compulsory process because a subpoenaed witness, Mr. Barnett, was unavailable due to the alleged witness tampering by Deputy Solicitor Brown. Petitioner claims that the state violated his right to a fair trial by allegedly interfering with his attempt to subpoena Barnett. Respondents counter that petitioner has failed to prove that either Deputy Solicitor Brown or any police officers interfered with Barnett's attendance at trial, noting that Barnett expressly denied ever talking to the Deputy Solicitor or to any police officer. Respondents also contend that anything that Barnett heard from any such police officers was hearsay and, in any event, harmless since Barnett testified he did not return to the second day of petitioner's trial because he wanted to go back to work to earn money and was not told he was no longer needed back at trial until after returning home from work that evening.

The magistrate determined that the petitioner had failed to carry his burden of proving that the state deprived him of Barnett's testimony. Noting that the object of the alleged tampering was Barnett, who testified that he had no contact with either the police or the deputy solicitor, the magistrate stated that any testimony about the alleged police action by Barnett involved hearsay statements by third parties as to what the police officers allegedly said. Consequently, the magistrate determined that Barnett's absence was not due to conduct by the state, but rather had been induced, on the second day of trial, by

---

3. Petitioner's original trial counsel testified at the PCR hearing that he "seemed to remember" Deputy Solicitor Brown talking to his witnesses and that he "seemed to remember" saying something to Brown about it (Tr. 464–65). Nevertheless, the state court apparently placed greater reliability on the testimony of the victim of the alleged tampering, James Barnett.

4. Clearly the presiding judge at the PCR hearing could have determined that the probative value of the testimony of the alleged victim of prosecutorial tampering outweighed testimony by the wife of a convicted felon, the unclear recollections of petitioner's trial counsel, and the hearsay evidence of investigator Cannon which directly contradicted Barnett's own admissions. Of course, this court has not attempted to independently evaluate the credibility of these various parties since the state court trial judge was in a better position "to observe the witnesses presented at the hearing and to pass upon their credibility and demeanor" (Tr. 546). Rather, the court is constrained to presume the correctness of the state court's factual finding pursuant to 28 U.S.C. § 2254(d). Interestingly, however, Barnett himself also admitted that he did not return on the second day of trial because he was broke and needed money and in fact went back to work on the second day of petitioner's trial.

It was not until he returned home from work that evening that he was allegedly told by Portee that he was no longer needed at the trial (Tr. 490).

The state court found that Barnett did not return because he had been told that he was not needed at the trial. At the PCR hearing, Barnett testified that he had been told by two county policemen not to return to petitioner's trial (Tr. 490). Upon further questioning, however, Barnett admitted he had not actually seen any policemen, but rather had been told by a second possible defense witness, Shorty Portee, that the police had been looking for him and had said there was no reason for Barnett to return to the trial (Tr. 491). This hearsay evidence in no way establishes petitioner's allegation that Deputy Solicitor Brown (or anyone at his direction) tampered with Barnett on the morning of the second day of trial. Furthermore, this hearsay evidence, standing alone, fails to establish the "'failure to observe that fundamental fairness essential to the very concept of justice,'" *Donnelly,* 416 U.S. at 643, 94 S.Ct. at 1871 (quoting *Lisenba,* 314 U.S. at 236, 62 S.Ct. at 290), sufficient to justify overturning petitioner's conviction in state court.

Barnett's desire to go to work, and on the third day of trial, by hearsay statements from persons who did not testify at the PCR hearing.

Petitioner contends, however, that the magistrate erred in that the trial court's failure or refusal to produce Barnett constituted an unreasonable denial of petitioner's right to compulsory process. Specifically, petitioner argues that the trial judge's denial of his motion for a continuance to locate Barnett violated his right to a fair trial.

■ Petitioner apparently complains both that he was deprived of his right to compulsory process and that the trial judge's denial of his motion for a continuance rises to the level of a violation of his right to due process. Nevertheless, federal collateral review of allegedly erroneous evidentiary rulings by a state trial court do not automatically rise to the level of constitutional error. Rather, the court's duty on a petition for habeas corpus is to determine whether the ruling at issue deprived the petitioner of his right to a fair trial. *Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871.

■ The Sixth Amendment right to compulsory process has been held applicable to state court criminal proceedings. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Indeed, the right to present a defense is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), citing *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). Obviously, this right to compulsory process encompasses the right to present the direct testimony of live witnesses. *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988). Although some early cases concluded that a petition for habeas corpus was not an appropriate device for reviewing compulsory process claims, *Brewer v. Hunter*, 163 F.2d 341, 342 (10th Cir.1947), *Fitzgerald v. Sanford*, 142 F.2d 445, 446 (5th Cir.), *cert. denied*, 323 U.S. 806, 65 S.Ct. 311, 89 L.Ed. 643 (1944), *Ex parte Smith*, 72 F.Supp. 935, 942 (M.D.Pa.1947), courts have now rejected this early view. *Shirley v. State of North Carolina*, 528 F.2d 819 (4th Cir.1975); *Thor v. United States*, 574 F.2d 215, 218 (5th Cir.1978). Nevertheless, the Constitution does not guarantee every state court defendant an error-free trial. *Trussel v. Estelle*, 699 F.2d at 259. Rather, federal habeas review is confined to the very narrow standard of due process. *Donnelly, supra; Shirley, supra.* And, of course, the *state*, rather than some other agency, must have deprived petitioner of his right to a fair trial to implicate the due process clause of the Fourteenth Amendment.

■ In *Shirley*, this circuit held that a state trial court's denial of defendant's request for a continuance resulted in a violation of the fundamental fairness standard implicit in the due process clause of the Fourteenth Amendment where the trial had already been delayed some sixteen months by the state and the defendant had made clear in his motion for the continuance that it was necessary in order to procure the testimony of a witness who was indispensable to his defense. In that case, the petitioner's case had been called as scheduled in North Carolina state court on May 11, 1971. At that time, the witness's absence was immediately brought to the attention of the court by the prosecutor who himself suggested delaying the trial. The next day, counsel for the petitioner filed a written motion for a continuance on the grounds that a material witness for the defense was absent. In this motion, among other things, defense counsel noted the importance of the missing witness' testimony, such that the vital importance of his testimony could not have escaped the trial judge.

Perhaps most important to the court's conclusion was the content of testimony actually given by the missing witness in the habeas proceeding. The missing witness testified that he saw someone other than the defendant in possession of the drugs for which petitioner had been convicted, and that he knew as a fact that any drugs in the petitioner's home, at the time of the alleged wrongdoing, had not belonged to the petitioner. Also, the missing witness swore that if he had been at the

petitioner's trial, he would have so testified. Consequently, on the peculiar facts of that case, the court determined that the fundamental fairness implicit in the due process clause of the Fourteenth Amendment had been violated. *Id.* at 823.

The present case is easily distinguishable from *Shirley* on multiple grounds. *First*, petitioner has failed to establish the main contention undergirding his due process challenge—that Deputy Solicitor Brown tampered with Barnett. *Second*, the post-conviction relief trial court found that Barnett did not return to petitioner's trial because he understood he was not needed; however, Barnett also admitted that he never saw Brown or any policemen. Barnett also testified at the PCR hearing that he did not return to petitioner's trial on the second day because he needed money and wanted to go back to work. Certainly Barnett's own testimony negates any allegations of tampering, as the state court found.

*Further*, unlike *Shirley*, the prosecution opposed petitioner's motion for a continuance at his state court trial. *Perhaps most important*, it cannot be overlooked that Barnett's testimony, which was given at the post-conviction relief hearing in state court, is far less helpful to petitioner than the testimony of the missing witness in *Shirley*. Indeed, Barnett's testimony was far from helpful to petitioner, (Tr. 495–96), and in fact, although testifying that he observed a female nearby the petitioner and his co-defendant on the day of the incident, he nevertheless could not say for sure whether she was the victim of the crime (Tr. 497). Accordingly, whereas the *state* deprived the petitioner in *Shirley* of his right to compulsory process, it cannot be said that the *state* deprived petitioner of his right to compulsory process under the circumstances of this case. Nevertheless, evaluation of petitioner's due process challenge would not be complete without reviewing the trial court's decision to deny petitioner's motion for a continuance during his trial in state court.

It is well established that a request for a continuance is a matter within the discretion of the trial court. *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). Only when a state court's refusal to grant the motion for a continuance can be deemed arbitrary and fundamentally unfair, however, will such a refusal implicate the due process clause of the Fourteenth Amendment. *Shirley, supra.*

The Supreme Court declared the proper standard of review in *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

> [t]he matter of continuance is traditionally in the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrarywise, a myopic insistence upon expediousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

On the second day of petitioner's trial, his original trial counsel, Douglas Strickler, made a motion for a continuance in order to locate Barnett. Earlier that same day, the trial judge had issued bench warrants to obtain the presence of two witnesses for the defense. According to Mr. Strickler, Barnett was to testify that he had observed the petitioner, his co-defendant, and the victim on Main Street on the day in question. Strickler stated that Barnett would testify that they stood on Main Street for some time and spoke with each other. Also, Strickler stated that Barnett would testify regarding the attitude of the three people towards each other at that time. Because Strickler admitted that he had not asked the victim whether she, the co-defendant, and the petitioner had a discussion with Barnett on the day in question, the court denied petitioner's motion for a continuance. The following day Barnett also

did not appear in court, making him unavailable to testify for the defense. While possibly in disagreement with the state court's denial of petitioner's motion for a continuance under the circumstances of this case, the court does not find that this denial was so fundamentally unfair as to implicate the due process clause.

Furthermore, although *Ungar* stressed the importance of evaluating the reasons presented to the trial judge at the time the request was denied, it did not mandate that the content of the testimony, if later discovered, could not also be considered in determining whether the due process clause was implicated. *See Shirley, supra.*[5] In the present case, the allegedly material missing witness, James Barnett, testified at the PCR hearing. At that hearing, Barnett testified that he saw a woman near petitioner and co-defendant on the corner of Lady Street and Main Street in Columbia on the day of the crime. Although Barnett testified that he stopped and spoke with them, (Tr. 494), he admitted that he could not tell whether the woman appeared to be with petitioner and the co-defendant (Tr. 494). Moreover, upon questioning by the court, Barnett admitted that he did not know who the woman was and had not paid her any attention when he had approached the petitioner and the co-defendant when meeting them on the day in question (Tr. 494–95). Later in his testimony, Barnett again emphasized that he had not paid the woman any attention when he talked with the petitioner and the co-defendant (Tr. 496). Upon further questioning, Barnett admitted that on the first day of petitioner's trial, he observed a woman in the courtroom but could not tell whether she was the same one that he had observed near the petitioner and his co-defendant on the day of the crime (Tr. 496, lines 4–17). Finally, Barnett testified that if the woman that was near the petitioner and his co-defendant was present in the courtroom at that time, he would not have recognized her (Tr. 496, line 20 to 497, line 10).

Although this court is of the opinion that the trial judge may have abused his discretion in refusing to grant a continuance on the basis of the reasons given by defense counsel as to the necessity of his testimony at petitioner's trial, this court is also of the opinion that this denial did not constitute a violation of petitioner's right to a fair trial. *See Donnelly, supra.* This conclusion is based in part on the low probative value of the testimony that Barnett ultimately gave at the PCR hearing, in contrast to the highly probative evidence given by the crucial missing witness in *Shirley,*[6] as well as by the fact that the petitioner has failed to show that the *state* deprived him of the testimony of an alleged material witness. Accordingly, this court must conclude that the trial judge's denial of petitioner's motion for a continuance during his trial in state court did not infringe the standard of fundamental fairness implicit in the due process clause of the Fourteenth Amendment.

Petitioner also contends that the prosecution's chief witness, the victim, perjured herself at his trial and also that his counsel was ineffective. However, petitioner's perjury allegations must fail, as he has merely provided the court with testimony inconsistent with that of the victim's

---

**5.** As collateral review of state court judgments exacts "costs, which include a reduction in the finality of litigation and the frustration of 'both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights,'" *Murray v. Carrier,* 477 U.S. 478 at 487, 106 S.Ct. 2639 at 2645, 91 L.Ed.2d 397 (1986), consideration of whether the unavailable witness' testimony was actually material or helpful to petitioner would appear to be a valid consideration when evaluating the propriety of overturning a state court criminal conviction, especially when the petitioner has failed to show any bad faith on the part of the state. *See Arizona v. Youngblood,* — U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law).

**6.** In other words, whereas the testimony of the absent witness in *Shirley* revealed the actual innocence of the petitioner there, the testimony of Barnett in the present action is not helpful to petitioner.

version of events,[7] and, a showing of mere inconsistent testimony does not establish a prima facie showing of perjury. *United States v. Anderson*, 481 F.2d 685, 702 (4th Cir.1973), *aff'd*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *Pigford v. United States*, 518 F.2d 831, 836 (4th Cir.1975); *United States v. Griley*, 814 F.2d 967, 971 (4th Cir.1987). Likewise, petitioner's ineffective assistance claim is barred since he did not raise this issue during his appeal from the denial of post-conviction relief, *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir.1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987), and has not shown cause and prejudice for the procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Based on the foregoing analysis and cited authorities, respondents' motion for summary judgment is granted. Rule 56, Fed.R.Civ.Proc.

IT IS SO ORDERED.

## ON MOTION TO RECONSIDER

By order filed December 15, 1988, this court denied petitioner's application for federal habeas corpus relief. This matter is presently before the court on petitioner's motion to reconsider. Rule 60(b), Fed.R. Civ.Proc. Petitioner's motion is without merit and is accordingly denied.

Rule 60(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ... or (6) any

other reason justifying relief from the operation of the judgment....

Petitioner has failed to raise any grounds that would entitle him to relief under Rule 60(b).

Petitioner complains that respondents' motion for summary judgment should not have been granted without providing him an opportunity to present evidence at an evidentiary hearing. First, petitioner contends that the constitution guarantees him the availability of subpoenaed witnesses during a state court criminal trial. Second, petitioner argues that his constitutional right to compulsory process was infringed when the state trial court denied his motion for a continuance during his criminal trial. Third, the petitioner declares that whether the Deputy Solicitor assigned to his case tampered with a material witness for his defense is a mixed question of law and fact, which is not entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). Fourth, petitioner alleges that this court is required to hold an evidentiary hearing in order to pass upon the credibility and demeanor of the witnesses who testified at the state post-conviction relief hearing. Fifth, petitioner contends that a federal habeas court can only consider the reasons presented to the state court trial judge at the time a motion for a continuance is denied in determining whether such denial is constitutionally prohibited. Sixth, petitioner contends that the chief prosecutorial witness perjured herself during his criminal trial. Finally, petitioner contends that this court has mischaracterized the credibility of several witnesses who testified during the state post-conviction relief hearing.

█ Petitioner's first and second contentions, alleging that the constitution guarantees the presence of subpoenaed witnesses and thus, that the state trial

---

**7.** Whereas the victim testified that she was looking for a job in downtown Columbia on the day of the crime, specifically at the Golden Eagle Hotel, petitioner alleges that the testimony given by his wife, Janice White, at the PCR hearing reveals otherwise. Mrs. White apparently cut out the classified section of a local newspaper on the dates immediately preceding the date of the crime, as well as allegedly talked to the assistant manager at the Golden Eagle Hotel, who allegedly told Mrs. White that there were no job openings during the period in question. While this purported evidence would have been useful to impeach the credibility of the victim at petitioner's trial, it falls far short of establishing the elements of perjury.

court erred in denying his motion for a continuance, fails to state a valid basis for relief under Rule 60(b). Obviously, the right to present a defense in a criminal proceeding is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), citing *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). Nonetheless, unless the *state* deprives the defendant of this right, the absense of a witness does not implicate the due process clause of the fourteenth amendment.

■■■ It is also well established that a request for a continuance is a matter within the discretion of the trial court. *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). The mere fact that a trial court may have abused its discretion in denying a motion for a continuance is not grounds for habeas relief. Rather, the due process clause is only implicated where the refusal can be deemed arbitrary and fundamentally unfair. *Shirley v. State of North Carolina,* 528 F.2d 819 (4th Cir.1975). *See Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

■■■ The court finds that petitioner's first and second complaints are without merit for the reasons stated in the original order in this matter (pp. 6–20). In short, petitioner has failed to create any *genuine* issue sufficient to show that the state contributed to Mr. Barnett's failure to appear on the second and third day of petitioner's trial. Rather, the record reveals, and the state post-conviction relief court found, that Barnett failed to return on the second day of petitioner's trial because he received word that he was not needed. Initially,

Barnett testified that two county policemen told him not to return to the trial. However, upon further questioning, Barnett admitted that he had never seen any policemen, but had been told by another subpoenaed witness, Shorty Portee, not to return to the trial. Furthermore, although petitioner also contends that Deputy Solicitor Brown instructed Barnett not to return, the state court apparently credited Barnett's testimony that he had never seen Brown and did not know what Brown even looked like. Moreover, the court concludes, based on the reasoning contained in its original order, that the trial court's failure to grant petitioner's motion for a continuance was not so arbitrary or fundamentally unfair as to violate his right to a fair trial (pp. 17–20).[1]

Petitioner next alleges that whether the Deputy Solicitor tampered with Mr. Barnett is a mixed question of law and fact which is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). However, in *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981), the Court stated that "Congress in § 2254(d) intended ... to establish that the findings made by the state-court system 'shall be presumed to be correct' unless one of seven conditions specifically set forth in § 2254(d) was found to exist by the federal habeas court." Furthermore, it is well established that the phrase "issues of fact" refers to "basic, primary, or *historical* facts: facts 'in the sense of a recital of external events and the credibility of their narrators....'" *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980) (quoting *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)). Consequently, whether the Deputy Solicitor tampered

---

**1.** Petitioner's fifth contention, that a habeas court must only consider the reasons presented to the state trial judge at the time he denies a motion for a continuance, must also be summarily rejected. As collateral review of state court judgments exacts "costs, which include a reduction in the finality of litigation and the frustration of both the States' sovereign power to punish offenders and their good faith attempts to honor constitutional rights," *Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), consideration of whether the witness' testimony was actually ma-

terial or helpful to petitioner is appropriate when evaluating the propriety of overturning a state court criminal conviction, especially when the petitioner has failed to show any bad faith on the part of the state. *See Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Accordingly, the content of Barnett's testimony given at the state post-conviction relief hearing was appropriately considered in determining whether the denial of petitioner's motion for a continuance rose to the level of a due process violation.

with a witness for the defense during petitioner's criminal trial falls within this classification and is thus entitled to a presumption of correctness under 28 U.S.C. § 2254(d).

Petitioner also contends that this court is required to hold an evidentiary hearing in order to pass upon the credibility and demeanor of the witnesses who testified at the post-conviction relief hearing in state court and that, in fact, this court has mischaracterized the credibility of several witnesses who in fact testified. In its order granting respondents' motion, this court stated that it "ha[d] not attempted to independently evaluate the credibility of these various parties." (p. 1471, n. 4). Indeed, such an independent evaluation of the credibility and demeanor of the witnesses is expressly proscribed by § 2254, at least absent a finding that the state court's factual conclusion is not supported by the record. The reference to petitioner's wife as the "wife of a convicted felon" was not an attempt to independently evaluate her credibility, but only to possibly explain the state court's ultimate determination on the factual issue before it. As such, this reference was not necessary to the court's decision and is accordingly retracted.

Finally, petitioner argues that the chief prosecutorial witness committed perjury during his trial in state court. The court reaffirms its conclusion that petitioner has failed to allege sufficient facts to support a prima facie case of perjury for the reasons given in the December 15, 1988 order (p. 1474).

Based upon the foregoing reasoning and cited authorities, this court finds petitioner's motion to reconsider its order of December 15, 1988 to be without merit. Rule 60(b), Fed.R.Civ.Proc. The motion is, accordingly, denied.[2]

IT IS SO ORDERED.

2. The court's disposition of this motion moots petitioner's motion for the appointment of coun-  sel.